UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOHN MARDIKIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:17-cv-00181-JDP<br><br>ORDER ON SOCIAL SECURITY APPEAL REMANDING THE CASE FOR FURTHER PROCEEDINGS<br><br>(Doc. No. 1.) |

Plaintiff David John Mardikian seeks judicial review of a decision by Nancy Berryhill, the Commissioner of the Social Security Administration, denying his applications for supplemental Social Security income and disability insurance benefits.[1] Mardikian contends that the decision (1) erroneously rejected the opinions of two treating physicians and (2) failed to consider his work history. The undersigned agrees with Mardikian that the Commissioner's decision mistakenly ignored the opinion of one treating physician and erroneously rejected the opinion of another without giving the required consideration to pertinent regulatory factors. The court remands this case for further proceedings on this basis and does not reach the issue of Mardikian's work history.

---

[1] The court is uncertain of Berryhill's precise title. We refer to her as the Commissioner for the sake of simplicity.

1

**I.      Background**

Mardikian, a Navy veteran, is a former owner of a graphic design business. AR 50-55, 81-82, 286-93, 429, 459.[2] After one heart attack, three strokes, and three divorces, AR 21, 47, 74-75, 228, 353, 538, Mardikian claims disability based on both physical and mental impairments.[3] His alleged impairments include ischemic heart disease, cerebral artery occlusion, depression, mood disorder, adjustment disorder, and neurological problems such as declining memory and cognitive functions. *See, e.g.*, AR 18-19, 268, 316.

Mardikian alleges that he suffers from severe symptoms. He sold the equipment from his graphic design business because he could no longer remember how it worked. AR 459. He cannot design or edit his work. AR 51-52. Once an avid reader with hundreds of books in his personal library, he now has difficulty reading. AR 56, 407. He has trouble remembering the steps necessary to take a shower. AR 452. He suffers from slurred speech, facial paresis (muscular weakness or partial paralysis caused by nerve damage or disease), upper back pain, dysesthesias (abnormal sense of touch), and numbness in his bilateral extremities. *See* AR 538.

**a.    Medical evidence**

This appeal centers on the ALJ's lack of consideration or limited consideration of the opinions of two treating physicians: Thin Myat, a primary care physician, and Jeff Mogelof, a neurologist. *See* AR 348-50, 537. On June 7, 2013, Myat wrote:

> Mr. David Mardikian has been under my care since 02/03/2012.
> He was admitted to VA hospital for ischemic stroke in 08/2011.
> Had neuropsychological testing done on 12/27/2011 and
> impressions included Cognitive Disorder NOS (mild), Adjustment
> Disorder with mixed emotional features. The etiology of this
> likely acquired cognitive disturbance is probably in part of a
> cerebrovascular origin.
>
> He was admitted to VA hospital for ischemic stroke in 08/2011.
> Had neuropsychological testing done on 12/27/2011 and

---

[2] All "AR" citations refer to the administrative record. (*See* Doc. No. 10.)
[3] The record indicates that Mardikian had a heart attack around 38 years of age, which the court takes to mean that he suffered a heart attack in approximately 2000. *See* AR 21, 228, 538. He had his first stroke in August 2011, AR 75, 538, second stroke in December 2012, AR 75, 538, and third stroke in March 2014, AR 47, 74-75. The dates of his divorces do not appear in the record.

2

> impressions included Cognitive Disorder NOS (mild), Adjustment Disorder with mixed emotional features. The etiology of this likely acquired cognitive disturbance is probably in part of a cerebrovascular origin.[4] He was admitted to the hospital again in December 2012 for hypertensive emergency with bilateral hand tingling and pain, most probably is from transverse myelitis. He is still under the care of neurology and working on the etiology of his symptoms.
>
> So at this point, this provider believes his previous stroke and medical conditions have made it difficult for him to work at his graphic design company.

AR 348-49. On February 25, 2015, Mogelof wrote:

> Mr. Mardikian has been a patient in the VA Fresno under our care for several years. He has several MRI proven strokes, a meningioma and changes on C- spine MRI as well. He has intermittent confusion and disability from these events and is unable to work and should be considered totally disabled.
>
> Further questions can be directed to Mr Mardikian by letter following the rules for patient record protection.

AR 537, 543.

Mardikian has seen other medical professionals, who have opined that he has depression, declining memory, and declining cognitive functions. *See* AR 353, 414, 493. A radiology report dated March 24, 2015 from the VA hospital notes an "[i]ncreasing size anterior left parasagittal meningioma [a brain tumor]; stable changes as detailed." AR 546.[5]

---

[4] The duplicate sentences appear in Myat's opinion.

[5] The ALJ did not consider the radiology report because Mardikian submitted it when he requested review by the Appeals Council, after the ALJ's decision. *Compare* AR 6-7, *with* AR 26-29. This court must consider the radiology report as part of the administrative record because the Appeals Council received it into evidence and considered it in deciding whether to review the ALJ's decision. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); AR 2, 7. The Appeals Council rejected a statement from Garry Bredefeld, another medical source because the statement was about "about a later time." AR 2. The parties do not rely on Bredefeld's statement, and this appeal does not depend on it.

**b. Procedural history**

On April 3, 2013, Mardikian applied for disability insurance benefits and supplemental security income, alleging that he had become disabled on August 16, 2011—approximately the date of his first stroke. *See* AR 16, 221, 228, 232, 253. The Social Security Administration denied his applications on September 18, 2013 and denied reconsideration on October 30, 2013. AR 151-56, 165-69. Mardikian requested a hearing before an administrative law judge and testified at a November 11, 2013 hearing. AR 34-90. An ALJ found Mardikian not disabled in a decision dated April 20, 2015. AR 16-25. Mardikian requested review of the ALJ's decision by the Appeals Council, but his request for review was denied on December 23, 2016. AR 1-9. The Appeals Council's denial of review made the ALJ's decision the final decision of the Commissioner and ripe for judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481, 422.210(a). Mardikian filed his complaint in this case on February 10, 2017. (Doc. No. 1.) Mardikian appeared before the ALJ without counsel; he has counsel on this appeal.

**c. ALJ's decision**

The ALJ found Mardikian not disabled after conducting a five-step sequential analysis under 20 C.F.R. §§ 416.920 and 404.1520. AR 16-29. At step one, the ALJ found that Mardikian had not engaged in substantial gainful activity since August 16, 2011, the alleged onset date of his disability. AR 18. At step two, the ALJ found two severe impairments: ischemic heart disease and cerebral artery occlusion. AR 18. At step three, the ALJ found that Mardikian had no impairment or combination of impairments that met or medically equaled the severity of any impairment listed under 20 C.F.R. Part 404 P, Appendix 1. AR 20. At step four, the ALJ found that Mardikian had the residual functional capacity ("RFC") to perform his past relevant work, which he categorized as that of a printer and a graphic designer. *See* AR 23. At step five, the ALJ found that Mardikian could perform other jobs in the national economy. AR 23-24.

The ALJ found that Mardikian retained the RFC to perform medium work. AR 20. In reaching this conclusion, the ALJ relied on the opinions of a consultative examiner and two

state-agency consultants. Perminder Bhatia, the consultative examiner, noted that an examination of Mardikian on August 14, 2013 found no deficiency. AR 424. Steven Strode, one of the two state-agency consultants, opined on September 12, 2013 that Mardikian could perform medium work. AR 102-04, 116-18. G. Bugg, the other state-agency consultant, opined on October 28, 2018 that Mardikian could occasionally lift 50 pounds, frequently lift 25 pounds, stand, sit, or walk for about six hours a day. AR 131-32. The ALJ explained that he gave the opinions of Bhatia, Strode, and Bugg "great weight" because they were "consistent with the record as a whole." AR 22.

In contrast, the ALJ did not adopt the opinions of Mardikian's treating physicians. The ALJ did not discuss Myat's opinion at all, and he gave Mogelof's opinion "little weight," stating that it was "inconsistent with or supported[6] by the evidence of record, which showed normal physical and neurological findings." AR 22.

The ALJ's treatment of other medical opinions is also worth noting. A state-agency consultant, G. Ikawa, opined on October 29, 2013 that Mardikian had mild difficulties maintaining concentration, persistence, or pace, and noted that Mardikian's medical record contained reports of "homicidal fantasies" and depression. AR 129.[7] The ALJ did not discuss Ikawa's opinion as part of the RFC analysis. Another consultative examiner, Mary Lewis, examined Mardikian on August 17, 2013, and opined that his mental functions were "not significantly impaired." AR 432-33. The ALJ did not state the weight he gave to Lewis's opinion, but he cited the opinion to rebut the opinion of Mogelof, a treating physician. *See* AR 22 (citing Exhibit 4F, at 4-5 (AR 429-30)).

---

[6] The ALJ may have intended to write "unsupported."

[7] A psychologist noted that Mardikian had "homicidal fantasies" despite his denial of any intent or plan to carry them out. AR 352. The psychologist asked Mardikian to give his firearm to his friend, which he did, and the psychologist concluded that Mardikian posed no danger to himself or others. AR 352-53.

5

## II. Discussion

The term "disability" means "inability to engage in any substantial gainful activity" caused by any physical or mental impairment that can last one year or result in death. *See* 42 U.S.C. §§ 423(d)(1)(A) (definition of disability for disability insurance benefits), 1382c(a)(3)(A) (definition of disability for supplemental security income).[8] The physical or mental impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. §§ 423(d)(3), 1382c(a)(3)(D). In terms of severity, the impairment must prevent claimant from performing both his previous work and other work in the national economy. *See id.* §§ 423(d)(2)(A), 1382c(a)(3)(B). A disability can result from the combined effect of multiple impairments, including those that, considered individually, are not severe. *See id*. §§ 423(d)(2)(B), 1382c(a)(3)(G).

On appeal, the district court reviews an ALJ's decision for errors of law and evaluates factual support. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The court will reverse or remand for legal error, such as a failure to apply correct legal standards. *See id.* at 676. The court cannot set aside a factual finding that is supported by substantial evidence, where substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 674. Although the substantial evidence standard can be a permissive one, the court may review "only the reasons provided by the ALJ" and "may not affirm the [the ALJ's decision] on a ground upon which he did not rely." *Id*. at 675 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

Mardikian contends that the ALJ erred in two ways: (1) the ALJ failed to consider treating physicians' opinions consistent with the applicable regulations, agency policy, and Ninth Circuit precedent; and (2) the ALJ failed to acknowledge Mardikian's strong work history when he assessed Mardikian's credibility in describing his symptoms.

An ALJ must evaluate every medical opinion received. *See* 20 C.F.R. §§ 404.1527(b) ("[W]e will always consider the medical opinions in your case record together with the rest of

---

[8] For disability insurance benefits, the definition of disability includes inability to work caused by blindness, 42 U.S.C. § 423(d)(1)(B), but blindness is not relevant here.

6

the evidence we receive."), (c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).[9] Ordinarily, the ALJ must give more weight to a treating physician's opinion than an examining physician's opinion. *See id*. § 404.1527(c)(1). The ALJ must give controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *See id*. § 404.1527(c)(1)-(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).[10]

Different standards govern the rejection of a treating physician's opinion, depending on whether the opinion is contradicted by the opinion of another physician. To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Ghanim*, 763 F.3d at 1161. To reject a contradicted opinion of a treating physician, the ALJ must give "specific and legitimate reasons." *Id*. (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). In either case, "substantial evidence" must support the ALJ's stated reasons. *Id.*

In addition to articulating the reasons for rejecting a treating physician's opinion, an ALJ must consider the regulatory factors enumerated in Section 404.1527(c), which include (1) length of the treatment relationship and frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) physician's specialization, and (6) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 676. An ALJ must take into account these factors for every medical opinion regardless of its source, *see* 20 C.F.R. § 404.1527(c), and an ALJ's failure to consider these regulatory factors "alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

---

[9] Mardikian filed his claims before March 27, 2017, so Section 404.1527, not Section 404.1520c, governs the ALJ's evaluation of medical opinions. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

[10] *But cf.* 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017, "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Here, the ALJ erred in at least two ways in assessing the opinions of Mardikian's treating physicians. First, the ALJ erred in not addressing the opinion of Myat. AR 349-50, (*See* Doc. No. 17, at 10, 19 (acknowledging Myat as a treating physician).). The ALJ had an obligation to consider every medical opinion, *see* 20 C.F.R. § 404.1527(b), where a medical opinion is defined as a statement from acceptable medical source that shows "judgment about the nature and severity of [the claimant's] impairments," *id*. § 404.1527(a)(2). Ignoring Myat's opinion was legal error. *See Hill*, 698 F.3d at 1160.

Second, the ALJ erred in rejecting a treating physician's opinion by relying on two consultative examiners' opinions without considering the regulatory factors enumerated in Section 404.1527(c). Below is the ALJ's discussion on Mogelof's opinion:

> In February 2015, Dr. Mogelof opined that the claimant was totally disabled and unable to work (Exhibit 8F). Under Social Security Ruling (SSR) 96-5p, a finding of disability is an issue specifically reserved to the Commissioner. Nevertheless, in making my decision, I still considered the opinion of Dr. Mogelof and gave it little weight because it is inconsistent with or [un]supported by the evidence of record, which showed normal physical and neurological findings (Exhibits 3F, pp. 4-5 and 4F, pp. 4-5).

AR 22. This falls short of discharging the ALJ's duty. *See Ghanim*, 763 F.3d at 1161 ("Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion."); *Trevizo*, 871 F.3d at 676 ("[T]he ALJ's outright rejection of [the treating physician's] opinion was legally erroneous. . . . [T]he ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion should be credited. . . . This failure alone constitutes reversible legal error.").

On appeal, the Commissioner argues that (1) the ALJ's failure to address Myat's opinion is harmless error; (2) the ALJ properly evaluated Mogelof's opinion; and (3) Mardikian's argument for a "more favorable interpretation" of the record asks the court to ignore the ALJ's analysis of the entire record. (*See* Doc. No. 17, at 18-20.) The court will address each argument in turn.

First, the ALJ's failure to address Myat's opinion is not harmless. The Commissioner argues that the error is harmless because Myat did not opine that "it would be impossible for [Mardikian] to return to his past relevant work" and did not provide any opinion on Mardikian's ability to adjust to other work. (Doc. No. 17, at 19.) The Commissioner is mistaken. Myat's opinion may not have included a conclusion regarding plaintiff's disability, but this does not mean that Myat's opinion, properly considered, would not have affected the ALJ's analysis. *See Hill*, 698 F.3d at 1160 (rejecting harmless error argument when medical source opined that claimant would be "unlikely" to work full time). An ALJ also has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (quoting *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir.2003)). If the ALJ had found the record ambiguous or inadequate for proper consideration, such a finding would have triggered the ALJ's duty to conduct an appropriate inquiry. *See id.* The law of this circuit requires an ALJ to be "especially diligent" when a claimant appears without counsel. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Failure to discharge that duty constitutes a legal error, and it is not harmless even if "it is not certain from the record" that Mardikian is disabled. *See Garcia*, 768 F.3d at 929.

Second, the Commissioner argues that Mogelof's opinion was properly rejected and offers a rationale that might support rejection. The Commissioner argues that the ALJ summarized the medical evidence "in detail" and cites the portion of the ALJ's opinion that precedes the ALJ's rejection of Mogelof's opinion. (*See* Doc. No. 17, at 18 (citing AR 18-23).) The ALJ, however, did not state that he rejected Mogelof's opinion because of the medical evidence summarized. *See Trevizo*, 871 F.3d at 677 ("[T]he district court erred by developing its own reasons to discount [treating physician's] opinion . . . ."). Furthermore, the Commissioner does not explain how the summarized evidence warrants rejecting Mogelof's opinion. Similarly, the court cannot adopt the Commissioner's argument that the ALJ properly rejected Mogelof's opinion as conclusory (Doc. No. 17, at 18-19), since the ALJ did not reject the opinion on that basis.

Third, the court cannot credit the ALJ as having considered the entire record. The ALJ wrote that the record "showed *normal* physical and neurological findings," AR 22 (emphasis added), but the record shows otherwise. According to Mogelof, Mardikian had "several MRI proven strokes, a meningioma and changes on C-spine MRI as well. He [had] intermittent confusion and disability from these events . . . ." AR 537. The record includes troubling reports from other health-care providers as well, who opined that Mardikian had depression, AR 353, declining memory and cognitive functions, AR 414, and suicidal ideations, AR 493.

**III. Conclusion and order**

The court will remand the case for further proceedings so that the ALJ may consider the opinions of physicians who have treated plaintiff David John Mardikian. The court does not reach the issue whether the ALJ erred in assessing Mardikian's credibility. The clerk of court is directed to enter judgment in favor of Mardikian and close the case.

IT IS SO ORDERED.

Dated: September 27, 2018

UNITED STATES MAGISTRATE JUDGE